IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**WALESCA I. PÉREZ-MALDONADO**,
   Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
   Defendant.

Civil No. 23-1147 (BJM)

**OPINION AND ORDER**

Walesca I. Pérez-Maldonado ("Pérez") moves to reverse the Commissioner of the Social Security Administration's (the "SSA's") decision to terminate her Social Security Disability Insurance benefits ("SSDI"). Docket No. ("Dkt.") 1. Such termination followed a rehearing held after this court found that the SSA's initial redetermination procedure violated Pérez's constitutional due process rights. Dkt. 12 ("Transcript" or "Tr.") at 1263-75. The SSA opposes the appeal. Dkt. 18. The case is before me on consent of the parties. Dkts. 4, 6.

For the following reasons, the SSA's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**STANDARD OF REVIEW**

The court's review of SSDI cases is limited to determining whether the SSA committed legal or factual error in evaluating a claim. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The SSA's findings of fact are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g). Questions of law are reviewed de novo. *Coskery v. Berryhill*, 892 F.3d 1, 3 (1st Cir. 2018). After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

An SSDI claimant is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

Pérez-Maldonado v. Commissioner of Social Security, Civil No. 23-1147 (BJM)                                    2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the adjudicator must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3).

Rather than requesting review of an initial determination, Pérez appeals a redetermination. "The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). The SSA may have reason to believe fraud or similar fault occurred through its own investigations, upon referral of an investigation by the Office of the Inspector General ("OIG"), or following a law enforcement investigation or criminal conviction. U.S. Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual I-1-3-25(C)(4)(A) (updated June 7, 2022) ("HALLEX").[1] "When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B).

According to HALLEX, a redetermination "based on fraud or similar fault is a re-adjudication of the individual's application for benefits." HALLEX I-1-3-25(A). The administrative law judge ("ALJ") charged with redetermining a claim may consider evidence initially submitted as well as new, material evidence that does not involve fraud or similar fault and that is related to the time period at issue. *Id.* at I-1-3-25(A), (C)(4)(c). The period at issue runs from the disability onset date through the date of the final benefits determination. *Id.* at I-1-3-

---

[1] HALLEX can be located online at https://www.ssa.gov/OP_Home/hallex/hallex.html.

25(C)(3). After reviewing the eligible evidence, the ALJ decides whether the beneficiary was entitled to benefits at the time of the original determination.

On redetermination, should the SSA determine "that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3). The Commissioner may "require such overpaid person or his estate to refund the amount in excess of the correct amount." *Id.* § 404(a)(1)(A). Beneficiaries may seek a waiver to avoid repayment of benefits later categorized as overpayments. *Id.* § 404(b)(1) ("[T]here shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery . . . would be against equity and good conscience.").

## BACKGROUND

The following is a summary of Pérez's medical history and records, as well as the case history before the SSA and this court.

Pérez was born on February 17, 1970. Tr. 1134. She spent roughly twenty years working in quality control in the pharmaceutical industry. Tr. 1136-37. During such time, Pérez developed several ailments, including degenerative disc disease, bilateral carpal tunnel syndrome, left knee degenerative joint disease, and depressive disorder. Tr. 1107. On August 25, 2011, she applied for SSDI, claiming a disability onset date of October 12, 2010. Tr. 1130.

Samuel Torres Crespo ("Torres"), a non-attorney representative, represented Pérez in her initial SSDI claim. Tr. 269. In support of her claim, Pérez submitted various forms of medical evidence, including records provided by her treating physician, Dr. Jose R. Hernández-González ("Dr. Hernández"). Tr. 271-72. The evidence from Dr. Hernández included nerve conduction studies, functional testing results, and neurological reports in which he opined that, based on Pérez's several medical conditions, she was unable to work. Tr. 759-61, 793-98, 1063-68. After an initial denial, the SSA informed Pérez that she had been found disabled and would begin receiving disability benefits. Tr. 282, 349.

Roughly seventeen months later, the Agency sent Pérez a letter informing her that it would be suspending her benefits because it believed fraud or similar fault was involved in her claim. Tr. 395. Given the suspected fraud, the SSA would redetermine Pérez's SSDI eligibility. *Id.*

The letter had its origins in an investigation into social security claims in Puerto Rico that began in 2009. Declaration of Francis X. Barry, *Pérez-Maldonado v. Commissioner of Social Security*, No. 18-cv-1725 (D.P.R. May 28, 2019), Dkt. 16-1 ("Barry Decl."). Employees of the Puerto Rico Disability Determination Service suspected that certain doctors were submitting fraudulent medical evidence in support of SSDI claims. *Id.* They conveyed their suspicions to the SSA, and the SSA referred the information to its OIG. *Id.*

The OIG performed an investigation which led to criminal charges. *Id.* ¶ 3. In August 2013, Torres was indicted for mail fraud, wire fraud, and making false statements to the SSA. Tr. 149-53. In October 2013, Dr. Hernández waived indictment and pled guilty to participating in a conspiracy to make false statements to the SSA. Tr. 177. In his plea agreement, Dr. Hernández admitted that he collaborated with Torres to exaggerate SSDI claimants' symptoms and thus maximize their chances of securing SSDI. Tr. 184. In September 2014, Torres pled guilty to making false statements to the SSA, admitting he had lied in two claimants' benefits applications, representing that they suffered from ailments from which they did not in fact suffer. Tr. 501-10. Pérez was neither indicted nor mentioned in the relevant plea agreements.

The SSA began to review the nearly 7,000 cases containing evidence from Torres, Dr. Hernández, and other indicted doctors. Barry Decl. ¶ 5. A special team conducted initial redeterminations, finding that roughly 2,000 claimants could no longer support their claims without the evidence from indicted sources. *Id.* The SSA suspended these individuals' benefits, notified them of the redetermination process, and gave them ten days to submit additional evidence before continuing with redetermination. *Id.* ¶ 6.

In Pérez's case, the SSA revisited her file, disregarded all evidence from Dr. Hernández because he was "considered a discredited medical source," and preliminarily found that she was not disabled. Tr. 301. In a letter dated March 31, 2014, the SSA informed Pérez that Torres and

various doctors, including Dr. Hernández, had been charged with making false statements to the SSA. Tr. 395. Because one or more of those charged had provided evidence in Pérez's case, the SSA would be redetermining her claim. *Id.* Pérez submitted additional evidence, including imaging studies and findings from physical exams, which the SSA considered. Tr. 292-93. Nonetheless, on May 8, 2014, the SSA informed Pérez that it had reviewed her case, excluded evidence from Dr. Hernández, and found her not disabled. Tr. 397. Pérez challenged the redetermination and requested a hearing. Tr. 403.

On April 22, 2016, the SSA wrote Pérez to explain what she could expect at her hearing. Tr. 516. According to the SSA, Pérez could present evidence on her own behalf, but the SSA was obligated to disregard evidence from Torres dated from August 1, 2008 through September 26, 2014, as well as that from Dr. Hernández dated from August 1, 2008 through October 28, 2013. Tr. 516–17. The letter also informed Pérez that the ALJ would only consider her entitlement through September 26, 2012. Tr. 516.

Pérez testified at a hearing before an ALJ on January 24, 2017. Tr. 36. At the hearing, the ALJ explained that he could not consider evidence from Torres and Dr. Hernández, but he would determine her eligibility for benefits based on other evidence. Tr. 39. The ALJ issued a decision on January 22, 2018, finding Pérez not disabled and explaining that her prior payments would be treated as overpayments. Tr. 332-33. In reaching his conclusion, the ALJ reviewed the entire record except the documents prepared by Torres and Dr. Hernández, which he was required to disregard. Tr. 312.

Pérez sought review of the ALJ's decision with the SSA's Appeals Council. Tr. 606. She submitted a letter urging the Appeals Council to find that she was not seeing Dr. Hernández in order to defraud the SSA, but rather, she believed him to be an honest man. Tr. 607. She sought to explain the circumstances surrounding her referral to Dr. Hernández. *Id.* The Appeals Council granted Pérez's request for review but did not address her letter claiming that her relationship with Dr. Hernández was honest. Tr. 620. Rather, it reiterated that, by law, the ALJ was not permitted to consider evidence from Torres or Dr. Hernández. *Id.* The Council then adopted the ALJ's material

findings, corrected one aspect of the ALJ's decision irrelevant to the present dispute, and issued a final decision finding Pérez not disabled. Tr. 7–10, 622.

Pérez sought review in this court, and I concluded that the redetermination procedure employed by the SSA violated the Fifth Amendment's due process clause. Tr. 1263. Social security benefits are a property intertest protected under the constitution, and the government cannot take them away without satisfying due process. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Since the ALJ reasoned that he was not allowed, by law, to consider evidence from Torres or Dr. Hernández, Pérez had not been given a chance to challenge the SSA's fraud allegation. Tr. 39, 311. I remanded the case to the agency with instructions to conduct a new hearing in which Pérez would be given an opportunity to challenge the SSA's fraud allegation. Tr. 1275.

A rehearing was held before a new ALJ on July 22, 2022. Tr. 1127. The ALJ informed Pérez that the hearing was her "opportunity to tell [the ALJ] why there is no fraud or similar fault with respect to the evidence to potentially be disregarded." Tr. 1128. Pérez's counsel made a statement at the outset of the hearing "objecting to the whole proceeding[]." *Id*. Counsel claimed that the act of holding the hearing indicated the ALJ had already decided that Pérez's application contained fraud, when in fact, the purpose of holding the hearing was to present evidence and arguments on this question. Tr. 1129. No representative from OIG or SSA was present at the hearing. Apart from referring to the criminal indictments and plea agreements of Torres and Dr. Hernández, Tr. 1131, no arguments were proffered, before or at the hearing, indicating why the SSA thought Pérez's records contained fraud. Pérez similarly presented no further defenses apart from objecting to the proceeding in general.

The ALJ subsequently issued an opinion, Tr. 1100-24, concluding that there was reason to believe the records from Torres and Dr. Hernández contained fraud. Tr. 1102-3. The ALJ noted that Torres and Dr. Hernández admitted to exaggerating medical records in more than two cases. She observed that the scheme they admitted to was factually similar to Pérez's case, particularly the presence of Torres as a representative, an EMG/NCS interpreted by Dr. Hernández, and a

Neurological Medical Report provided by Dr. Hernández. Consequently, she refused to consider those records when re-evaluating whether Pérez was disabled. *Id*. After reviewing the remaining evidence in the record, the ALJ concluded that Pérez was not disabled. Tr. 1118.

The Appeals Council rejected Pérez's subsequent appeal. Tr. 1469-1472, Tr. 1080-3. Pérez then filed a complaint in this court challenging the ALJ's decision. Dkt. 1. The SSA provided arguments linking Pérez's case with Torres's and Dr. Hernández's fraud indictments in their brief, Dkt. 18 at 14-17, which Pérez did not address in her reply, Dkt. 19.

## DISCUSSION

### A. Issues Considered

Pérez's brief raises a host of unsupported arguments challenging the SSA's decision. Dkt. 13. She claims, generally without elaboration, that (a) SSR 22-2p,[2] enacted "many years" after Pérez's claim, cannot be applied retroactively, (b) the SSA only redetermined cases where the claimant was found to be disabled, and ignored cases where the claimant was not found to be disabled, in violation of an unspecified provision of the constitution, (c) the SSA did not act "immediately" as required by Section 205(u) of the Social Security Act,[3] and (d) the SSA's procedures violated the APA. *Id*. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Thus, I will not address Pérez's arguments listed above.

Pérez's most substantial objection concerns the lack of evidence of fraud on the record. At the hearing, Pérez's attorney argued "there is no evidence on the record whatsoever of there being fraud or similar fault in this case." Tr. 1128. Further, in her letter to the Appeals Council, Pérez noted that "[n]o evidence demonstrative of [f]raud or similar fault was presented at the hearing or contained in the record and as such the evidence adduced cannot be discounted" and that "[t]here

---

[2] 87 Fed. Reg. 29993 (May 17, 2022). SSR 22-2p explains the process used by the SSA to redetermine claims in which a reason to believe fraud or similar fault arises.
[3] 42 U.S.C. § 405(u).

is no "new" evidence of fraud in this record which could be used to review that determination." Tr. 1470, 1472. The ALJ took a different position, saying that she "view[ed] this [hearing] as [Pérez's] opportunity to tell me why there is no fraud or similar fault with respect to the evidence to potentially be disregarded." Tr. 1129.

In sum, the parties' main substantive disagreement is who bore the burden of production up to and at the hearing. Was the SSA required to produce evidence and arguments showing that Pérez's records from Torres and Dr. Hernández were tainted by fraud, or was Pérez required to show that the same records were not tainted by fraud? I will consider this question below.

**B.  Burden of Production; Satisfaction of Due Process**

In my previous opinion and order, I found that Pérez had a right, under the Fifth Amendment's Due Process clause, to challenge the SSA's allegation of fraud in her case. Tr. 1275. Continued receipt of social security benefits is a statutorily created property interest protected by the Due Process Clause. *Mathews*, 424 U.S. at 332. The SSA could not cancel Pérez's benefits without first providing her with an opportunity to challenge the agency's fraud claim. I remanded Pérez's case to the SSA to conduct a new hearing, with an instruction to "provide Pérez with notice of its reasons for believing fraud or similar fault was involved in any evidence in her application and provide her with an opportunity to respond before a neutral decisionmaker." Tr. 1275.

As is clear from the wording of the above instruction, the SSA bore the burden of production on remand to present its reasons for believing that Pérez's claim for benefits was tainted by fraud. While I did not specify exactly what procedure the SSA needed to follow, they were required to, at minimum, present their evidence and arguments before or at the hearing. *See* Tr. 1273 ("The burden is [] borne by OIG investigators, who would have to better explain why there is 'reason to believe fraud or similar fault' was involved in a beneficiary's application"). Otherwise, Pérez would be unfairly burdened with proving a negative (*i.e.*, that her case did not involve fraud) without reference to the reasons why the SSA suspected fraud in the first place. *See generally Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (procedural due process requires "a *fair* opportunity to rebut the Government's factual assertions") (emphasis added).

This understanding of the SSA's burden is consistent with federal court precedent on procedural due process. In *Hicks v. Colvin*, 214 F. Supp. 3d 627 (E.D. Ky. 2016), the court held that a social security claimant had a procedural due process right to challenge the SSA's assertion of fraud in her case. The court described what an acceptable procedure might look like:

> The SSA calls an OIG agent to the redetermination hearing. The agent testifies about how he came to believe that there was fraud in part of Hicks's file. Hicks cross-examines the agent and presents evidence to show why her forms were all true. After this exchange, the ALJ can decide for herself whether to consider [the challenged evidence].

*Id*. at 644-45; *see also Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 U.S. App. LEXIS 11223, 2024 WL 1994918 at *11 (6th Cir. May 6, 2024) (rejecting Sexton's due process challenge noting that "a witness from the OIG testified at her hearing to explain why he believed Sexton's application contained fraudulent information, and the witness was cross-examined by Sexton's attorney"). More generally, the Supreme Court has identified the government's burden of production in procedural due process cases as an "immutable [principle] in our jurisprudence." *Greene v. McElroy*, 360 U.S. 474, 496 (1959) ("[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue").

That the SSA bears the burden of production is also consistent with the ALJ's duty to develop the factual record at the hearing, as well as their inability to consider post-hearing medical reports without providing the claimant an opportunity to cross-examine the author of such reports. *See Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir. 1989) ("[W]hen an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when

such cross-examination is necessary to the full presentation of the case"); *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (ALJ has a duty to "develop an adequate record from which a reasonable conclusion can be drawn"). These requirements are motivated by the same procedural fairness concerns underlying the constitutional due process right, namely, that the government must be transparent with its reasons when taking an adverse action and must provide fair opportunity to challenge adverse evidence and arguments. *See Hicks v. Colvin*, No. 16-154, 2016 U.S. Dist. LEXIS 176888, 2016 WL 7436050 at *1 (E.D. Ky. Dec. 21, 2016) ("The main point of [the due process clause] is that the government cannot do things to you *without telling you why* and without giving you a chance to speak for yourself") (emphasis added).

In this case, at no time before or during the hearing did the SSA provide a clear statement of reasons why they believed Pérez's records from Torres and Dr. Hernández were tainted by fraud. The hearing notice sent to Pérez merely referred to the investigations and guilty pleas of Torres and Dr. Hernández, Tr. 1397, but none of these mention Pérez, and the SSA did not otherwise articulate a link between her records and the fraud scheme. The SSA's burden of production could have easily been satisfied by having an OIG representative at the hearing to present their evidence and arguments, or by submitting a prehearing report to the same effect. Instead, while the hearing technically gave Pérez a chance to rebut the SSA's fraud allegation, there was nothing presented for her to rebut.

The ALJ and SSA later provided arguments for why Pérez's records were tainted by fraud, the former in her post-hearing opinion, Tr. 1102, and the latter in its response brief before this court. Dkt. 18 at 14-17. But these reasons were not articulated at the hearing, thus denying Pérez the opportunity to challenge them. Pérez could have addressed the ALJ's arguments in her social security brief (Dkt. 13) and the SSA's arguments in her reply brief (Dkt. 19), respectively, and she

did not do so. However, development of the record is a duty for the ALJ rather than the reviewing district court. *See Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001) ("It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits…the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ. [] It does not fall on the reviewing court."). The district court's role is merely to verify that any factual determinations made by the ALJ are supported by substantial evidence and to consider whether any legal errors were committed. *Id*. at 9. As such, the SSA's failure to raise its arguments at the hearing stage constituted a legal error unremedied by their subsequently proffered arguments.

The SSA bore the burden of producing evidence and arguments to support their fraud allegation at the hearing stage, and since they failed to do so, the redetermination proceeding violated Pérez's procedural due process rights.

**C. Remedies**

A court reviewing a final decision from the SSA "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Pérez requests that the SSA's denial of benefits be reversed, presumably without remanding the cause for a rehearing. Dkt. 13 at 7. The question thus arises as to what remedy I should provide – whether to remand the case for a rehearing to correct the previous hearing's deficiencies, or to remand with an instruction to award benefits.

Generally, a remand awarding benefits is rare and limited to cases where "the agency has no discretion to act in any manner other than to award [] benefits" or where "legal error clarifies the record such that awarding benefits is the clear outcome." *Richard v. Colvin*, No. 15-252M, 2016 U.S. Dist. LEXIS 112188, 2016 WL 4446121 at *19 (D.R.I. 2016). "[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the

Commissioner and his designee, the ALJ." *Seavey*, 276 F.3d at 10. As a result, a remand awarding benefits generally requires "that the record, as it currently stands, conclusively shows that [the claimant] is disabled." *Id*. at 11.

However, even when "entitlement is not totally clear," courts in this circuit have occasionally recognized and exercised an "equitable power to order benefits…[when] the delay involved in repeated remands has become unconscionable." *Id*. at 13; *see Yasmin V. v. O'Malley*, No. 23-cv-456, 2024 U.S. Dist. LEXIS 96336 at *2 (D.R.I. 2024); *Larlee v. Astrue*, 694 F. Supp. 2d 80, 86-87 (D. Mass. 2010); *Richard*, 2016 U.S. Dist. LEXIS 112188 at *19-20. "Administrative deference does not entitle the Commissioner to endless opportunities to get it right." *Seavey*, 276 F.3d at 13. Factors relevant to determine whether remanding for further proceedings is unconscionable include the total time elapsed since the claimant's application was submitted, the number of hearings and remands already held, and the apparent strength of the claimant's case.[4]

Here, the current record does not "conclusively show[] that [Pérez] is disabled" such that "the agency [would have] no discretion to act in any manner other than to award [] benefits" on remand. *Richard*, 2016 U.S. Dist. LEXIS 112188 at *19. Given the procedural issue identified previously, the record is incomplete on the critical question of whether the documents from Torres and Dr. Hernández were tainted by fraud. This question could go either way on remand and would likely be outcome-determinative – Pérez has already been found disabled when such evidence is included, Tr. 349, and not disabled when the same evidence is excluded. Tr. 282, 332-33, 1118.

Moreover, the circumstances of this case do not render a remand for further proceedings unconscionable. It is not possible to fairly assess the strength of Pérez's claim until the record is properly developed. I note and sympathize with the fact that Pérez originally applied for benefits

---

[4] *See Yasmin V.*, 2024 U.S. Dist. LEXIS 96336 at *2 ("Yasmin has pursued her claim through four years and two-erroneous ALJ decisions. It took six months [] for the Commissioner to give Yasmin her new hearing after the prior remand, and another four months for the [ALJ] to issue his partially favorable Decision [] that is the subject of this appeal. Delays are especially unconscionable where the evidence of her disability during that time is at least very strong and there is no contrary evidence.") (internal citations omitted); *Larlee*, 694 F. Supp. 2d at 87 ("Larlee initially filed for benefits over eleven years ago. She has endured two administrative hearings, two petitions to the Appeals Council, and two appeals to the District Court. Moreover, the SSA lost her administrative record prior to the first District Court appeal and the Appeals Council took four years to render a decision as to the second review").

in 2011, nearly thirteen years ago. Tr. 1265. Since then, she has been initially denied benefits, then subsequently found disabled, then stripped of her benefits based on a fraud allegation which she was impermissibly barred from challenging, and finally denied benefits a third time in a proceeding that did not provide her with a fair chance to challenge the fraud allegation. *See supra* pp. 2-7. The SSA has now had two chances to get the fraud redetermination proceeding right and has employed constitutionally insufficient procedures on both occasions – the SSA is "not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993). However, given the ambiguous strength of her claim on the current record, remanding for further proceedings is essential to fairly evaluate her entitlement and the additional delay is not unconscionable.

## CONCLUSION

For the foregoing reasons, the SSA's decision terminating Pérez's benefits is **REVERSED** and **REMANDED** for a new hearing pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of July, 2024.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge